# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MAHENDER S.B.,[1]

    Petitioner,

    v.

CHRISTOPHER CHESTNUT, et al.,

    Respondents.

No. 1:26-cv-00326-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner Mahender S.B.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED in part. Petitioner's request for a TRO is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 2.) Petitioner is a 34-year-old native and citizen of India. (*Id.* at 5.) Petitioner entered the United States on July 8, 2024, without presenting himself for inspection or seeking admission. (*Id.*) A U.S. Customs and Border Patrol ("CBP") officer arrested Petitioner inside the United States and detained him. (*Id.*) Respondents released Petitioner on his own recognizance and removal proceedings were initiated at the time of release. (*Id.*) Petitioner was paroled pursuant to Immigration and Nationality Act ("INA") § 212(d)(5). (*Id.*)

On July 9, 2024, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), which charges that Petitioner is a noncitizen present in the United States who has not been admitted or paroled. (*Id.*; ECF No. 2-1 at 7.) Thereafter, Petitioner appeared at all required hearings in immigration court. (ECF No. 2 at 5.) On September 4, 2024, Petitioner filed an application for defensive asylum. (*Id.*) While Petitioner's case was pending before the Adelanto Immigration Court, Respondents required him to report in person to U.S. Immigration and Customs Enforcement ("ICE") regularly and he complied with this requirement. (*Id.*)

On August 13, 2025, when Petitioner reported in-person to the ICE office as instructed, ICE immediately detained him and transferred him to the California City Correctional Center, where he remains detained to date. (*Id.*) Petitioner now challenges the lawfulness of his civil detention and seeks release. (*See* ECF Nos. 1, 2.)

## II. STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

---

[2] The instant factual background is taken largely verbatim from Petitioner's brief in support of his motion for TRO. (ECF No. 4.)

1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

**III.    ANALYSIS**[3]

A.    Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Fifth Amendment Due Process Clause and the INA.  The Court discusses each claim in turn.

*i.    Violation of Procedural Due Process*

Petitioner has established a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 2 at 7–10.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[3]    The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice.  *See* Fed. R. Civ. P. 65(b).  Petitioner notified Respondents via email that he would be filing the motion and served copies of the documents.  (*See* ECF No. 2 at 15.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a)    Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he gained a liberty interest in his continued freedom after he was released on his own recognizance and paroled into the United States. (ECF No. 2 at 7.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner asserts he has consistently complied with all immigration requirements, appeared at all required hearings in immigration court, and reported to ICE as scheduled. (*Id.* at 5–6.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community

4

for over five years strengthened petitioner's liberty interest).

### b)      *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  Petitioner asserts he was released on his own recognizance in July 2024 and remaining out of custody would allow him to live at home, work, and assist his counsel to present his asylum claim to the immigration court. (ECF No. 2 at 5, 8.)  Petitioner has now been detained for almost five months without any bond hearing. (*Id.* at 3, 5, 11.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  As previously mentioned, Petitioner was not provided any bond hearing.  (ECF No. 2 at 3, 5, 11); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")).  Thus, the Court finds there is a serious likelihood Petitioner was likely erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at \*5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at \*4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Here, Petitioner asserts the Government's interest in detaining him without a hearing is low, where Petitioner has consistently appeared for all scheduled immigration hearings and has no criminal record. (ECF No. 2 at 8–9.) The Court agrees. As stated above, Petitioner's arrest is evidence of his compliance because it occurred during a routine check-in. (*Id*.) Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Petitioner contends below, and this Court finds, applies to Petitioner. Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the

State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release and has no criminal history — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Petitioner asserts that Respondents have not provided any post-deprivation process. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### ii. Violation of the INA

Petitioner has also established a likelihood of success on his claim that his detention is unlawful under the INA. (ECF No. 2 at 10–13.) Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. *Id.* Further, § 1226(a) provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

Petitioner asserts there is a clear record showing that his prior arrest in July 2024 was made pursuant to INA § 236 — in other words, § 1226 — as he was released on his own recognizance. (ECF No. 2 at 12.) Petitioner also points to the NTA issued by Respondents where they do not indicate he is an arriving noncitizen. (*Id.*) The Court agrees. As this Court, and many others, have repeatedly found: § 1225(b) applies only to noncitizens "seeking admission" – – a category that does not include noncitizens like Petitioner who were detained within the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3

(E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position).  This Court has made its position clear.  Absent a higher court order holding otherwise, this Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b).  Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum.  Yet, Respondents have not provided any hearing to Petitioner either pre- or post-detention.  Accordingly, Petitioner is likely to succeed on the merits of his claim that Respondents have violated the INA and improperly subjected him to mandatory detention without a hearing.

B.     Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Such harm is present here, as Petitioner asserts the risks outlined in *Hernandez* are present in his case.  (ECF No. 2 at 9.)  Petitioner also asserts that without the requested relief, he faces the significant ongoing harms of loss of his liberty and inability to support himself, his family, and to assist fully in preparation to present his asylum claim.  (*Id.*)  Thus, Petitioner has sufficiently established irreparable harm.

C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S.*

8

*Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Petitioner asserts there is little to no harm to Respondents to release Petitioner until a pre-detention hearing can be completed to show detention is warranted.  (ECF No. 2 at 9.)  The Court agrees.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is GRANTED in part.  Petitioner's request for a TRO is GRANTED.  This Court will rule on the request for a preliminary injunction following briefing as set forth below;

2. Respondents must IMMEDIATELY RELEASE Petitioner Mahender S.B. from custody.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show: material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a

preliminary injunction continuing this Order.  Respondents shall file responsive papers by **January 23, 2026**.  Petitioner may file a reply, if any, by **January 27, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

5.  Petitioner is ORDERED to immediately serve this Order and all documents filed in this case to date on Respondents, including a copy via email to: usacae.ecf2241-imm@usdoj.gov.  **Petitioner shall file a proof of such service by 10:00 a.m. on January 20, 2026**;

6.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4);

7.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); and

8.  The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 16, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE