UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAHENDER S.B.,

      Petitioner,

    v.

CHRISTOPHER CHESTNUT, et al.,

      Respondents.

No. 1:26-cv-00326-TLN-CKD

**ORDER**

    This matter is before the Court on Petitioner Mahender S.B.'s ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  On January 16, 2026, the Court granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why a preliminary injunction ("PI") should not issue on the same terms.  (ECF No. 4.)

    In response, Respondents state that if the Court is inclined to grant a PI, judicial economy counsels the Court should go further and enter a final judgment granting the Petition for Writ of Habeas Corpus on the merits.  (ECF No. 8 at 2.)  Petitioner agrees.  (ECF No. 9 at 2.)  The Court accordingly considers the merits and for the reasons set forth below, GRANTS the Petition for Writ of Habeas Corpus.

///

///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 2.)  Petitioner is a 34-year old native and citizen of India.  (*Id.* at 5.)  Petitioner entered the United States on July 8, 2024, without presenting himself for inspection or seeking admission.  (*Id.*)  A U.S. Customs and Border Patrol ("CBP") officer arrested Petitioner inside the United States and detained him.  (*Id.*)  Respondents released Petitioner on his own recognizance and removal proceedings were initiated at the time of release.[2]  (*Id.*)  Petitioner was paroled pursuant to Immigration and Nationality Act ("INA") § 212(d)(5).  (*Id.*)

On July 9, 2024, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), which charges that Petitioner is a noncitizen present in the United States who has not been admitted or paroled.  (*Id.*; ECF No. 2-1 at 7.)  Thereafter, Petitioner appeared at all required hearings in immigration court.  (ECF No. 2 at 5.)  On September 4, 2024, Petitioner filed an application for defensive asylum.  (*Id.*)  While Petitioner's case was pending before the Adelanto Immigration Court, Respondents required him to report in person to U.S. Immigration and Customs Enforcement ("ICE") regularly and he complied with this requirement.  (*Id.*)

On August 13, 2025, when Petitioner reported in-person to the ICE office as instructed, ICE immediately detained him and transferred him to the California City Correctional Center, where he remains detained to date.  (*Id.*)

///

///

---

[1]   The instant factual background is taken verbatim from the Court's prior Order.  (ECF No. 4.)

[2]   The Court notes that Respondents state that Petitioner's Order of Release on Recognizance was revoked due to a violation of his release, which "was gleaned from information in government databases."  (ECF No. 8 at 2 n.3.)  The Court finds this information does not change the analysis in this Order.  Indeed, the Court agrees with Petitioner that "Respondents offer no evidence of the nature of the alleged violations, the supposed violation dates, the relationship of any alleged violations to Petitioner constituting a flight risk or danger to the community, where the information was stored, maintained, or 'gleaned' from, or any way to assess whether the claim is in any fashion reliable or relevant to this case."  (ECF No. 9 at 2.)

Petitioner now challenges the lawfulness of his civil detention and seeks release. (*See* ECF Nos. 1, 2.)  As stated above, the Court granted Petitioner's motion for a TRO and now considers the merits of the Petition for Writ of Habeas Corpus.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of due process.[3]  (*See* ECF No. 1.)

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[3]    Petitioner asserts claims for a violation of procedural due process, substantive due process, unlawful arrest in violation of the Fourth Amendment, and a violation of the Administrative Procedure Act in his Petition. (ECF No. 1 at 17–21.)  However, Petitioner only substantively briefed the Court on the procedural due process claim in his motion for TRO and in his reply. (ECF Nos. 2, 9.)  The Court finds it need not address Petitioner's additional claims and arguments to rule on the Petition, as these claims seek the same relief Petitioner seeks in his procedural due process claim.  For this reason, the Court further declines to consider Respondents' arguments with respect to Petitioner's additional claims. (ECF No. 8 at 3–9.)

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. <u>Liberty Interest</u>

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he gained a liberty interest in his continued freedom after he was released on his own recognizance and paroled into the United States. (ECF No. 2 at 7.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner asserts he has consistently complied with all immigration requirements, appeared at all required hearings in immigration court, and reported to ICE as scheduled.[4] (*Id.* at 5–6.) As this

---

[4] Further, to the extent Respondents argue Petitioner's Order of Release on Recognizance was revoked due to a violation of his release (ECF No. 8 at 2 n.3), any such violation would have been proper for a pre-deprivation hearing. *See Rodriguez Diaz v. Kaiser*, No. 25-CV-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sept. 16, 2025) ("To the extent that Respondents argue that Petitioner-Plaintiff's liberty is diminished by alleged violations of his conditions of release, these factual disputes must be adjudicated at a pre-deprivation hearing.").

4

Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### B.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[5] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated. The Court will consider each in turn.

#### i.    Petitioner's Private Interest

As to the first *Mathews* factor, Petitioner has been out of custody since July 2024. (*See* ECF No. 2 at 5.) Remaining out of custody would allow Petitioner to live at home, work, and assist his counsel to present his asylum claim to the immigration court. (*Id.* at 8.) Further, Petitioner asserts that continued detention would result in an inability to support himself and his family. (*Id.* at 9.) The foregoing creates a powerful interest for Petitioner in his continued liberty. *See Doe*, 787 F. Supp. 3d at 1094.

///

---

[5]    As an initial matter, Respondents maintain Petitioner's procedural due process claim fails because the *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) balancing test does not apply to due process requirements for immigration detention. (ECF No. 8 at 7.) The Court does not find this argument persuasive. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F. 4th at 1206–07 (citations omitted).

Respondents argue that even though a noncitizen's private interest in freedom from prolonged detention is "unquestionably substantial," courts have upheld mandatory detention during removal proceedings against due process challenges, even where removal proceedings are prolonged. (ECF No. 8 at 8 (citing *Demore v. Kim*, 538 U.S. 510, 530–31 (2003); *Keo v. Warden of the Mesa Verde ICE Processing Center*, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *8 (E.D. Cal. Apr. 7, 2025)).) Petitioner does not respond to this argument.

The Court finds the case law Respondents cite to be distinguishable from the instant matter. Both *Demore* and *Keo* concern detention pursuant to 8 U.S.C. § 1225(c), which concerns the removal of noncitizens convicted of an aggravated felony and the procedures set forth in that subsection. *Demore*, 538 U.S. 501; *Keo*, 2025 WL 1029392. Here, the Court has already found Petitioner is subject to 8 U.S.C. § 1226(a) and entitled to the process that subsection requires, including a bond hearing at a minimum. (ECF No. 4 at 8.)

ii.        *Risk of Erroneous Deprivation*

As to the second *Mathews* factor, the Court finds the risk of erroneous deprivation to be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). This is particularly so where, as here, Petitioner has no criminal history and has consistently appeared for all scheduled immigration hearings. (ECF No. 2 at 9); *see R.D.T.M.*, 2025 WL 2686866, at *6 ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Respondents argue Petitioner has not clearly shown a hearing on his custody status would decrease the risk of him being erroneously deprived of his liberty, as the record shows Petitioner is an "applicant for admission" who was transferred from expedited removal to full removal proceedings after establishing a credible fear of persecution or torture. (ECF No. 8 at 8 (citing 8 U.S.C. § 1225(b)(1)).) As this Court has already found, 8 U.S.C. § 1225(b) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who were detained within the United States. (ECF No. 4 at 7 (citing *Morales-Flores v. Lyons*,

6

No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025)).) Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum. (*Id.* at 8.) Yet, Respondents have not provided any hearing to Petitioner either pre- or post-detention. (*Id.*)

*iii.    Government's Interest*

As to the third *Mathews* factor, the Court finds the Government's interest in detaining Petitioner without a hearing before a neutral decisionmaker to be negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the government's interest is further diminished here where Petitioner was already found appropriate for release on parole, has complied with the conditions of that parole, and has no criminal history. (ECF No. 2 at 9.) "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

Respondents contend "the government clearly has a strong interest in preventing [noncitizens] from remaining in the United States in violation of our law." (ECF No. 8 at 8 (quoting *Rodriguez Diaz*, 53 F.4th at 1208 (cleaned up)).) However, as the Court has already stated in its prior Order, where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." (ECF No. 4 at 6 (quoting *Hernandez*, 872 F.3d at 994; *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).) Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Hernandez*, 872 F.3d at 996 (noting that in 2017, the costs to the public of immigration detention amounted to a total daily cost of $6.5 million).

7

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where Petitioner has substantially complied with the conditions of his release and has no criminal history — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.  Respondents did not provide either.  Accordingly, the Court finds Respondents' re-detention of Petitioner without a hearing violates due process.

**IV.   CONCLUSION**

For the foregoing reasons:

1.   The Court GRANTS Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1);

2.   Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present; and

3.   The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: January 29, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8